CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED

JUN 3 0 2009

JOHN F CORCORAN, CLERK
BY: K Dotson
DEPUTY CLERK

# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## HARRISONBURG DIVISION

| | |
|---|---|
| JAMES I. MOSIER, | Case No. 5:08cv00077 |
| Plaintiff | REPORT AND |
| v. | RECOMMENDATION |
| MICHAEL J. ASTRUE, | By:  Hon. James G. Welsh |
| Commissioner of Social Security, | U. S. Magistrate Judge |
| Defendant | |

    The plaintiff, James I. Mosier, brings this action pursuant to 42 U.S.C. § 405(g) challenging the final decision of the Commissioner of the Social Security Administration ('the agency") denying his application for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, as amended ("the Act"), 42 U.S.C. §§ 416 and 423. Jurisdiction of the court is pursuant to 42 U.S.C. § 405(g). The Commissioner's Answer was filed on January 9, 2009 along with a certified copy of the administrative record ("R.") containing the evidentiary basis for the findings and conclusions set forth in the Commissioner's final decision. By order of referral entered January 12, 2009 this case is before the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

    In his Complaint the plaintiff moved the court for summary reversal of the final administrative decision on the basis of what he contends to be uncontradicted medical evidence of

his disabling functional limitations. Additionally, he alleges that the Administrative Law Judge's (ALJ) adverse decision was arbitrary, capricious, and based on factual errors. In contrast, the Commissioner's answer alleges that the relevant findings in the final administrative decision are based on substantial evidence, and he has moved the court for its summary affirmance.

Pursuant to the court's Standing Order No. 2005-2 the plaintiff "must file, within thirty (30) days of service upon the plaintiff of a copy of the administrative record, a brief addressing why the Commissioner's decision . . . should be reversed or the case remanded."[1] Despite the passage of more than six months, no brief has been filed, and no extension of time has been requested. Therefore, for purposes of this case, briefing by the plaintiff is deemed to have been waived; each party is deemed to have moved for summary judgment in his favor, and the case is now before the undersigned for a report and recommended disposition.

I. **Summary Recommendation**

Based on a thorough review of the administrative record and for the reasons herein set forth, it is recommended that the plaintiff's prayer for relief be denied, the Commissioner's motion for summary judgment be granted, and an appropriate final judgment be entered affirming the Commissioner's decision denying benefits.

---

[1] Pursuant to the same Standing Order, any request by the plaintiff for oral argument must be requested in writing by the plaintiff at the same time.

## II. Standard of Review

The court's review in this case is limited to a determination as to whether there is substantial evidence to support the Commissioner's conclusion that the plaintiff failed to meet the statutory conditions for entitlement to DIB prior to the expiration of his insured status.[2] "Under the ... Act, [a reviewing court] must uphold the factual findings of the [Commissioner], if they are supported by substantial evidence and were reached through application of the correct legal standard." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). This standard of review is more deferential than *de novo*. "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Mastro*, 270 F.3d at 176 (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Id.* (*quoting Craig v. Chater*, 76 F.3d at 589). Nevertheless, the court "must not abdicate [its] traditional functions," and it "cannot escape [its] duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974). The Commissioner's conclusions of law are, however, not subject to the same deferential standard and are subject to plenary review. *See Island Creek Coal Company v. Compton*, 211 F.3d 203, 208 (4th Cir. 2000); 42 U.S.C. § 405(g).

## III. Administrative History

---

[2] The plaintiff's last insured date is December 31, 2003. (R.16,18,57,59,580.)

3

The record shows that on January 24, 2005 the plaintiff's filed his DIB application and alleged therein that he became disabled on April 8, 1998 due to a "back injury with nerve damage." (R.16, 54,57,66-67.) His application was denied both initially and on administrative reconsideration, and a hearing was held on February 15, 2006 before an ALJ. (R.16,25-37,44-48,53,603 *et seq*.) The plaintiff was present; he testified, and he was represented by counsel. (R.16,38-43,603-613.) Earl Glosser, Ph.D., a vocational witness, was also present and testified, (R.16,50-52,613-621.)

By written decision dated May 16, 2006, the plaintiff's claim was denied. (R.16-24.) Taking into account the plaintiff's age,[3] education, work experience and his decisionally significant functional impairments, the ALJ concluded that through the date he was last insured[4] the plaintiff retained the ability to perform a range of work activities at a light exertional level,[5] including such representative occupations as cashier (with a sit/stand option),[6] information clerk and dispatcher. (R.18-24.) After requesting Appeals Council review, the plaintiff submitted cumulative opinion information from Robert Andet, M.D., in a post-hearing effort to rebut the ALJ's functional capacity

---

[3] Under the agency's regulations, the plaintiff is classified as a "younger person" and age is generally not considered to affect seriously such an individual's ability to adjust to other work. 20 C.F.R. § 404.1563(c).

[4] Pursuant to the agency's regulations, the plaintiff must prove he became disabled on or before his date last insured in order to establish a DIB claim. 20 C.F.R. § 404.141.

[5] "*Light work*" is defined in 20 C.F.R. § 404.1567(b) to involve lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category generally requires a good deal of walking or standing, or when it involves sitting most of the time it generally involves some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, an individual must have the ability to do substantially all of these activities. A job may also be considered light work if it requires "standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday" with intermittent sitting. Social Security Ruling ("SSR") 83-10.

[6] The opportunity to change positions during the performance of work activity is typically described as the "sit/stand option" or "sit/stand limitation." See *Gibson v. Heckler*, 762 F.2d 1516, 1518 (11th Cir., 1985).

4

findings. (R.12-13.602A-602B.) After this request to review was denied, the plaintiff instituted his appeal. (R.6-9,13,559-565.)

IV.    **Facts and Analysis**

The administrative record in this case shows that the plaintiff was thirty years of age at the time his insured status expired, has a high school education, last worked in 1998, and his past relevant employment included work as a gas station cashier [7] and as a machinist apprentice.[8] (R.20,54,57,59,61-63,67-68,72,614-616.)

The plaintiff in this case sustained a work-related injury to his low back in April 1998 resulting in residual chronic low back pain and an attendant buttock and leg radiculopathy for which he received Workers Compensation. (R.18,20,85-86,87,88-92,132,515,560.) Radiographic studies in August 1998 found the plaintiff to have a facet defect at L3 and to have degenerative disc disease at L3/4, at L4/5 and to a lesser extent at L5/S1. (R.85.) Four years later, an EMG and related nerve conduction study showed the plaintiff to have an attendant "chronic mild left lumbar radiculopathy (likely at left L5 and possibly at S1 as well)." (R.105-106.)

Between the date of his injury and the expiration of his insured status at the end of December 2003, the plaintiff was treated conservatively. A corset was prescribed in August 1998. (R.85.) He

---

[7] This work was described by the vocational witness as semi-skilled and light in exertional level. (R.616.)

[8] This work was described by the vocational witness as skilled and medium in exertional level. (R.615.)

was referred for an initial four weeks of physical therapy in the Spring of 1999. (R.88.) In late August 1999 the plaintiff was referred by Dr. John Marsh (his primary care physician) for an extended period of physical therapy, and in January 2001 he was referred by Dr. Marsh to the Bailint Pain Management Center (Drs. Bart Bailint and Robert Audet). (R.491-492,560, *see also* R.143-490,518-559,590-602.)

Over the next three years, the plaintiff's treatment for this work-related low back injury included physical therapy (R.143-409), a number of lumbar facet joint and nerve root blocks, and the use of various prescription pain relievers (R.107-142,500-515,528-561).

In addition to reviewing the injury-related medical evidence in some detail, the ALJ noted that the plaintiff had significant alcohol-related cirrhosis,[9] his continued regular use of tobacco products and his treatment of gastrointestinal reflux, an irritable bowel, mild reactive airway disease, and non-assessed symptoms of depression. (R.20-22.) The ALJ took note of the fact that in the very early stages of therapy the plaintiff was found to be able to lift twenty pounds regularly, stand for one hour intervals, walk for ten minute intervals, and perform job duties with a sit/stand option. (R.20,88-92.) He took note of the fact that the plaintiff had reported to Dr. Marsh in March 2000 that he was able to do light housework, feed his dogs, get the mail (R.20,97), and more recently rthat he was the primary custodian of his two (R.583). *Inter alia*, the ALJ also took note of the various medical reports and functional capacity opinions of Dr. Marsh, including those dated March 8, 2000

---

[9] Dr. Marsh's office notes for April 14 and for June 12, 2003 record that the plaintiff was drinking 12 beers per day. (R.501.)

(R94-97), November 1, 2000 (R.98-99) and May 9, 2005 (R.495-496), the related opinions and treatment note entries of Dr. Audet (R.493-494,518-560), and the state agency psychological and medical assessments (R.562-574,575-581.)

Consistent with the agency's standard sequential evaluation process, [10] the ALJ found that the plaintiff met the insured-status requirements of the Act through December 31, 2003; that he had engaged in no substantial gainful activity at any time relevant to decision; that his degenerative disc disease, attendant back pain with radiculopathy, and substance addiction disorder were "severe" functional impairments; that his gastrointestinal reflux, alcohol-related cirrhosis, irritable bowel syndrome and complaint of depression would have no more than a minimal impact on the plaintiff's ability to work; that his lumbar spine impairment did not meet, or medically equal either Listing 1.04A or 1.04B (R.19); and that he had no other condition or combination of conditions that met or equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appx. 1. (R.18-19). In his Complaint, the plaintiff takes no issue with any of these findings, and from a review of the records each is supported by substantial evidence.

A.

---

[10] Determination of eligibility for social security benefits involves a five-step inquiry. *Mastro v. Apfel.* 270 F. 3d 171, 177 (4th Cir. 2001). It begins with the question of whether, during the relevant time period, the claimant engaged in substantial gainful employment. 20 C.F.R. § 404.1520(b). If not, step-two of the inquiry is a determination whether, based upon the medical evidence, the claimant has a severe impairment. 20 C.F.R. § 404.1520(c). If the claimed impairment is sufficiently severe, the third-step considers the question of whether the claimant has an impairment that equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations. 20 C.F.R. § 404.1520(d); 20 C.F.R. Part 404, subpart P, Appx. I. If so, the claimant is disabled; if not, step-four is a consideration of whether the claimant's impairment prevents him or her from returning to any past relevant work. 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a). If the impairment prevents a return to past relevant work, the final inquiry requires consideration of whether the impairment precludes the claimant from performing other work. 20 C.F.R. § 404.1520(f).

The "uncontradicted medical evidence of his disabling functional limitations" to which the plaintiff makes reference in his pleadings appears to be to Dr. Audet terse April 26, 2004 opinion that the plaintiff was "unable to work due to low back pain" [11] (R.494) and Dr. Marsh's similarly terse May 9, 2005 outline of what he deemed to be the plaintiff's significant sitting and standing limitations (R.495).[12] On examination, this contentions are unpersuasive. The ALJ outlined in considerable detail the degree to which the treating source opinions were inconsistent with the objective medical evidence and lacked any supporting clinical or laboratory diagnostic basis. (R.20-22.) Having done so, the ALJ has no decisional obligation to give controlling, or even any, weight to these conclusory opinions. *See Craig v. Chater*, 76 F. 3$^d$ 585, 590 (4th Cir. 1996); *see also Underwood v. Astrue*, 2008 U.S. Dist. LEXIS 80347 (WDVa, 2008) (citing *Craig* and noting that 20 C.F.R. § 404.1527(d)(2) requires controlling weight to be given to treating physicians' opinions only when those opinions are consistent with substantial evidence in the case).

**B.**

The ALJ's finding that the plaintiff's testimony concerning the intensity, duration and limiting effects of his subjective symptoms was "not entirely credible" appears to be one of the issues presented to the court by the plaintiff as a finding based of caprice and factual error. This claim of error is also without merit.

---

[11] The plaintiff's reliance on this opinion by Dr. Audet is misplaced. Under the agency's regulations the issue of disability is reserved to the Commissioner, and an ALJ is never bound by a treating physician's opinion on the ultimate issue in the case. 20 C.F.R. § 404.1527(e)(1).

[12] In a response to written questions propounded by plaintiff's counsel, Dr. Marsh opined that the plaintiff could walk no farther than 100 yards at one time, could stand no longer than 29 minutes at one time, could sit no longer than 15 minutes at one time, and could alternately sit and stand for no longer than 90 minutes. (R.495.)

8

In making the sequential determinations whether an individual retains the functional ability to perform a past relevant job or to perform other work that exists in significant numbers, the ALJ must consider the individual's subjective complaints. This involves the use of a two-step evaluation process [13] by which the ALJ must first determine whether there is objective medical evidence of an underlying condition or conditions that could reasonably be expected to produce the plaintiff's pain or other subjective symptoms. If such objective medical evidence exists, the ALJ must then evaluate the intensity, persistence and limiting effects of the pain and other subjective symptoms on the plaintiff's ability to do basic work activities. Necessarily, this second step involves consideration of a number of factors in order to access the plaintiff's credibility regarding his subjective complaints.[14]

In the instant case, the ALJ fully complied with this two-step credibility analysis. After first determining that the plaintiff's lumbar disc disease could reasonably be expected to produce the low back and leg pain about which the plaintiff complained, the ALJ further concluded that the plaintiff's statements concerning the intensity, duration and limiting effects of these subjective symptoms were "not entirely credible." (R.20.) In support of this finding, the ALJ *inter alia* noted the conservative nature of the plaintiff's medical treatment and the April 1999 findings (one year after his injury) that

---

[13] *See* 20 C.F.R. § 404.1529; Social Security Ruling ("SSR") 96-7p; *see also Hines v. Barnhart*, 453 F.3d 559, 564-565 (4th Cir. 2006).

[14] Pursuant to the agency's regulations, this credibility evaluation requires consideration of the following: (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms." SSR 96-7p, 1997.

the plaintiff was then able to lift twenty pounds frequently and stand for sixty minute intervals. He took note of Dr. Marsh's opinion in March 2002 that the plaintiff was at that time "able to perform office work" and the February 2002 EMG and Nerve Conduction studies which suggested only a "mild, chronic left lumbar radiculopathy." Likewise, he considered Dr. Audet's report that the plaintiff had never been tested for any sitting, standing or walking limitations; he took note of the plaintiff's alcohol-related cirrhosis, gastrointestinal reflux and his irritable bowel syndrome; and he properly reviewed the scope of the plaintiff's daily activities which included his ability to care for the needs of two children for whom he is the primary custodian. (R.20-22.)

The ALJ having made an evaluation of the plaintiff's subjective complaints in accord with the two-step process outlined in 20 C.F.R. § 404.1529 and SSR 96-7p, it is not the court's function to re-weigh that evidence and make a credibility determination. *See e.g., Shively v. Heckler*, 739 F.2$^d$ 987, 989-990 (4th Cir. 1984) ("subjective evidence of pain cannot take precedence over objective medical evidence or the lack thereof"); *Mastro v. Apfel*, 270 F. 3$^d$ 171, 176 (4th Cir. 2001) (quoting *Craig*, "Under the Social Security Act, [a reviewing court] must uphold the factual findings of the Secretary if they are supported by substantial evidence and were reached through application of the correct legal standard."); *Hays v. Sullivan*, 907 F.2$^d$ 1453, 1456 (4th Cir. 1990) ("it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the [Commissioner]").

## C.

In addition to the ALJ's credibility finding, the plaintiff's claim of decisional caprice and factual error also appears to include the ALJ's conclusion that through the date the plaintiff was last insured he retained the functional ability to perform a number of representative jobs at a light exertional level. This contention is equally unpersuasive.

As outlined above, the ALJ expressly considered the treating source opinions upon which the plaintiff seeks to rely; he noted that the plaintiff had never been evaluated for depression; he reviewed the plaintiff's medications; he took note of the plaintiff's limited ability to flex or extend his lumbar spine and his good range of motion otherwise; and he considered the functional assessments provided by the state agency medical and psychological reviewers. [15] (R.20-22.) In addition to outlining the reasons for his decision regarding the plaintiff's residual functional capacity, the ALJ also explained his decision to accept the assessment of exertional limitations made by the state agency consultants. (R.22-23.) Based on vocational testimony consistent with this residual functional capacity assessment, the ALJ then determined that the plaintiff was unable to perform any of his past relevant work; however, through the date that he was last insured the ALJ concluded that the plaintiff retained the ability to perform a range of light work and was not disabled (R.23-24). *See Johnson v. Barnhart*, 434 F.3d 650, 659 (4th Cir. 2005 (an ALJ's hypothetical needs to contain only those impairments shown by credible evidence); *Chester v. Bowen*, 792 F.2d 129, 132 (4th Cir. 1986) (establishing that a person who can no longer perform his former job can engage in other substantial

---

[15] The agency's regulations provide that the medical opinions of State agency medical and psychological consultants may not be ignored and can be given weight if supported by evidence in the record. 20 C.F.R. § 404.1527(f)(2)(i).

11

Case 5:08-cv-00077-SGW-JGW   Document 12   Filed 06/30/09   Page 11 of 14   Pageid#: 37

gainful activity is "in almost all cases satisfied only through the use of vocational expert testimony").

Without question, therefore, these decisional step-four and step-five findings by the ALJ are supported by substantial evidence.

V.  **Proposed Findings of Fact**

As supplemented by the above summary and analysis and on the basis of a careful examination of the full administrative record, the undersigned submits the following formal findings, conclusions and recommendations:

1. The Commissioner's final decision is supported by substantial evidence and does not contain any legal error;

2. For purposes of DIB, the plaintiff's insured status expired on December 31, 2003; The

3. The ALJ properly determined that the plaintiff had no condition, either singularly or in combination, that met nor medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appx. 1;

4. The ALJ properly considered and determined the decisional weight to be given to the treating source opinions of Drs. Audet and Marsh;

5. The ALJ properly considered and determined the decisional weight to be given the opinions of state agency consultants;

6. Substantial evidence supports the ALJ's credibility assessment concerning the intensity, duration and limiting effects of the plaintiff's subjective symptoms;

7. Substantial evidence supports the finding that during the relevant period covered by the ALJ's decision that the plaintiff had the functional ability to perform a range of light work as described by the vocational witnesses;

8. The ALJ's decision demonstrates his evaluation of the plaintiff's subjective symptoms in accordance with SSR 96-7p;

12

9.  The plaintiff has not met his burden of proving his disability prior to the expiration of his insured status; and

10. The final decision of the Commissioner should be affirmed.

## VI. Recommended Disposition

For the foregoing reasons, it is RECOMMENDED that an order be entered AFFIRMING the final decision of the Commissioner, GRANTING SUMMARY JUDGMENT to the defendant, DENYING plaintiff's claim, and DISMISSING this case from the docket of the court.

The clerk is directed to transmit the record in this case immediately to the presiding distract judge and to transmit a copy of this Report and Recommendation to all counsel of record.

## VII. Notice to the Parties

Both sides are reminded that, pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, they are entitled to note objections, if any they may have, to this Report and Recommendation within ten (10) days hereof. **Any adjudication of fact or conclusion of law rendered herein by the undersigned to which an objection is not specifically made within the period prescribed by law may become conclusive upon the parties**. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitals or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objections.

13

Dated: this 29th day of June 2009.

                                                                        /s/    *James G. Welsh*
                                                                        United States Magistrate Judge